J-S89002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: Z.E.W.-C., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: S.T.C., FATHER | |
| | No. 1768 EDA 2016 |

Appeal from the Order Entered May 11, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000737-2015, CP-51-DP-0001344-2012

BEFORE:  SHOGAN, MOULTON, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:　　　　　　**FILED DECEMBER 21, 2016**

S.T.C. ("Father") appeals from the order entered on May 11, 2016, terminating his parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b) to his daughter, Z.E.W.-C. ("Child"), born in August of 2011.[1] We affirm.

---

[*]  Former Justice specially assigned to the Superior Court.

[1]  The trial court also terminated the parental rights of Child's mother, L.W. ("Mother") on May 11, 2016.  Mother filed separate appeals, assigned Superior Court Docket Numbers 1842 and 1843 EDA 2016, relating to the termination of her rights to Child and a sibling, D.A.S.W., who has a different father.  This Court consolidated Mother's appeals *sua sponte* on July 13, 2016.  Mother's parental rights are addressed in her separate appeals; this case relates only to Father.

The trial court set forth the factual and procedural background of this case as follows:

> On July 12, 2012, [Department of Human Services ("DHS")] received a General Protective Service (GPS) report alleging that [Mother] sold her food stamps instead of buying food for the children. The family home was in deplorable condition. The home was infested with mice and roaches. Additionally, [Child's] siblings were truant from school. [Father] also resided in the home and smoked marijuana. The report was substantiated.
>
> [Mother] did not cooperate with DHS from July 13, 2012 to July 20, 2012.
>
> On August 3, 2012, [Mother] failed to appear at a Motion to Compel Hearing before the Honorable Jonathan Q. Irvine. Pursuant to a hearing, Judge Irvine granted the Motion to Compel Cooperation.
>
> On August 10, 2012, Judge Irvine ordered DHS to hire a private investigator to assist with DHS's investigation.
>
> On August 24, 2012, the private investigator located the family at a different address.
>
> On October 31, 2012, DHS implemented In-Home Protective Services (IHPS) in the home.
>
> DHS and IHPS determined that the condition of the home was inappropriate. The home was overcrowded and needed to be cleaned. Furthermore, [Child] looked unkempt. Moreover, DHS learned that [Child] was not current with medical, dental and vision appointments or immunizations.
>
> DHS was denied access to the family home from December 27, 2012 thru January, 2013. [Father] also resided in the family home.
>
> On February 7, 2013, an adjudicatory hearing was held before the Honorable Jonathan Q. Irvine. Judge Irvine adjudicated [Child] dependent and committed her to the care and custody of DHS. [Child] was placed in foster care.

The matter was listed on a regular basis before Judges of the Philadelphia Court of Common Pleas-Family Court Division-Juvenile Branch pursuant to section 6351 of the Juvenile Act, 42 Pa.C.S.A. §6351, and evaluated for the purpose of determining or reviewing the permanency plan of [Child].

In subsequent hearings, the DRO's reflect the [c]ourt's review and disposition as a result of evidence presented, addressing, and primarily with, the goal of finalizing the permanency plan.

On April 5, 2016 and May 11, 2016, a Termination of Parental Rights hearing for [Father] was held in this matter.

On May 11, 2016, [t]he [c]ourt found by clear and convincing evidence that [Father's] parental rights of [Child] should be terminated pursuant to the Pennsylvania Juvenile Act. Furthermore, the [c]ourt held that it was in the best interest of [Child] that the goal be changed to adoption.

Trial Court Opinion, 6/28/16, at unnumbered 1–2. Father filed a timely notice of appeal; both Father and the trial court complied with Pa.R.A.P. 1925.

Father raises the following issues on appeal:

1. Did the Department of Human Services (DHS) present clear and convincing evidence to support the trial court's decree terminating [F]ather's parental rights under 23 Pa.C.S. § 2511(a)(1)(2)(5)(8) establishing that [F]ather failed to remedy the parenting deficiencies that caused [C]hild to be placed in foster care?

2. Did the trial court abuse its discretion by determining that it would be in [C]hild's best interest to be adopted pursuant to 23 Pa.C.S. §2511(b)?

Father's Brief at 3.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *In re R.I.S.*, 614 Pa. 275, 36 A.3d 567, 572 (Pa. 2011) (plurality). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel-Bassett v. Kia Motors America, Inc.*, 613 Pa. 371, 455, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 575 Pa. 647, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 539 Pa. 161, 165, 650 A.2d 1064, 1066 (Pa. 1994).

*In re I.E.P.*, 87 A.3d 340, 343–344 (Pa. Super. 2014) (quoting *In re Adoption of S.P.*, 47 A.3d 817, 826–827 (Pa. 2012)).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental

- 4 -

rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that the "standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" ***Id***. (quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)). Moreover, this Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

The trial court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). Order, 5/11/16. We will focus on section 2511(a)(2) and (b), which provide as follows:

### § 2511. Grounds for involuntary termination

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The

rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2) and (b). This Court has explained that the focus in terminating parental rights under section 2511(a) is on the parent, but under section 2511(b), the focus is on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

To satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002). This Court has stated that a parent is required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. *Id*. A

parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

Father asserts that he did not fail to act nor was he incapable of performing parental duties. Father's Brief at 12. He avers that he completed all of the goals identified by DHS with the exception of obtaining affordable housing; in this regard, he complains that DHS "has done nothing to assist him with housing." *Id*. Father suggests that he satisfied that goal by moving to Virginia "because he knew he could get housing there." *Id*. at 13.

Our review of the record does not support Father's claims. The trial court noted the following in explaining Father's noncompliance with his Family Service Plan ("FSP") goals:

> In the instant case, [Father] did not complete all of his FSP goals. The original DHS social worker testified that [Father's] FSP objectives were: 1) report to the Clinical Evaluation Unit (CEU) for an evaluation, recommendations and random drug screens, 2) complete drug and alcohol treatment, 3) obtain appropriate housing, 4) maintain visits with [Child] and 5) complete parenting classes (N.T., 4-5-16, p. 44). [Father] did not comply with the CEU objective. [Father] testified that he did not complete any drug screens in 2015 or in 2016. (N.T., 5-11-16, p. 21). Furthermore, [Father] did not complete drug and alcohol treatment (N.T., 4-5-16, p. 43). Moreover, [Father] did not obtain appropriate housing (N.T., 4-5-16, p. 81). Lastly, [Father] did not consistently visit with the child. [Father] did not have ANY visits with the child from August 2015 until December, 2015. (N.T., 4-5-16, pgs. 80).

\* \* \*

In the instant case, the testimony established that the original and current DHS social workers explained to [Father] that he must comply with his FSP objectives for reunification to occur with his child. (N.T., 4 -5 -16, pgs. 39 and 78). [Father] did not comply with all of his FSP objectives. [Father] did not comply with his CEU objective. Furthermore, he did not complete drug and alcohol treatment. [Father] has been referred to the CEU for an evaluation and random drug screens at numerous hearings, however, he failed to comply. (DHS Exhibit 2, 4/5/16), (N.T., 3/27/16, p. 55), (DHS Exhibit 1, 4/5/16, N.T., 6/20/16, p. 27). Moreover, [Father] did not inquire about [Child's] medical or educational needs. (N.T., 4/5/16, p. 82). Lastly, [Father] did not have appropriate housing. [Mother and Father] reside in the same residence. However, [Mother's] parenting capacity evaluation indicated that she is unable to provide a safe environment for [Child]. (N.T., 4/5/16, p. 67, 5/11/16, p 24).

Trial Court Opinion, 6/28/16, at unnumbered 3–4.

We agree with the trial court that there is competent evidence in the record supporting its findings and credibility determinations. Father has not performed parental duties, has made insufficient efforts to foster a relationship with Child, has not resolved the conditions necessitating Child's placement, and lacks the ability, in his association with Mother, to provide Child the safety necessary for her well-being. We conclude that the trial court did not abuse its discretion in finding that Father's parental rights should be terminated under 23 Pa.C.S. § 2511(a)(2). *Adoption of S.P.*, 47 A.3d at 826–827.

Next, we review the termination of Father's parental rights pursuant to 23 Pa.C.S. § 2511(b). Our Supreme Court has stated:

[I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental,

- 8 -

physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "intangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.,* 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted).

A parent's abuse and neglect are likewise a relevant part of this analysis:

[C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d 753, 763-764 (Pa. Super. 2008) (affirming the involuntary termination of the mother's parental rights, despite the existence of some bond, where placement with the mother would be contrary to the child's best interests, and any bond with the mother would be fairly attenuated when the child was separated from her, almost constantly, for four years).

In fact, our Supreme Court has observed that the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition, and that "[e]ven the most abused of children will often harbor some positive emotion towards the abusive parent." *T.S.M.*, 71 A.3d at 267 (quoting *K.K.R.-S.*, 958 A.2d at 535). The Supreme Court instructed, "[T]he continued attachment to the natural parents, despite serious parental rejection through abuse and neglect, and failure to correct parenting and behavior disorders which are harming the children cannot be misconstrued as bonding." *T.S.M.*, 71 A.3d at 267 (citation omitted).

We have explained that a parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights. *Z.P.*, 994 A.2d at 1121. Further, this Court has stated: "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted,

upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted). It is well settled that "we will not toll the well-being and permanency of [a child] indefinitely." *Adoption of C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

Father asserts, without reference to the record, that "[t]his is not a case where DHS is claiming that there is no parent-child bond . . . ." Father's Brief at 17. That indeed was the position of DHS. Stacy Ann Barrett, the current case manager for Child, testified that even though Father did not visit Child, she suffered no irreparable or significant harm. N.T., 4/5/16, at 80. Child never asked about Father. *Id*. at 81. Child was merely one year old when removed from her parents' custody and placed in her current foster home. *Id*. at 83. Her foster mother, who provides the primary parental bond for Child, wishes to adopt her. *Id*. Foster mother provides Child with love, safety, stability, and support and meets Child's educational and medical needs. *Id*. at 83–84. During cross-examination by the Child Advocate, Jennifer Mullin, Ms. Barrett stated that Child is "very

attention seeking and she's constantly close with the foster parent during the visit." *Id*. at 89–90.

In concluding that Child's primary bond is with her foster mother and that adoption is in Child's best interests, the trial court stated as follows:

> Pursuant to Section 2511 (b), the trial court must take in account whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. *In Re C.S.*, 761 A.2d 1197, 1202 (Pa. Super. 2000).
>
> In the instant matter, [Child] resides in the pre-adoptive foster home along with her sibling. [Child] shares her primary parental bond with the foster parent. (N.T., 4-5-1[6], p. 83). The foster parent provides [Child] with love safety and support. She meets [Child's] medical needs. (N.T., 4-5-16, pgs. 83 and 84). The foster mother enrolled [Child] in painting class. (N.T., 4-5-16, p. 88). Moreover, [Child] did not ask for [Father] during the five month period when he did not visit with [Child]. (N.T. 4/5/16, p. 80). Furthermore, [Child] would not suffer permanent/irreparable harm if the parental rights of [Father] were terminated. Lastly, it would be in the best interest of [Child] if she were freed for adoption. (N.T., 4-5-16, p. 84).

Trial Court Opinion, 6/28/16, at unnumbered 5.

After careful review, we find the record supports the trial court's factual findings, and the court's conclusions are not the result of an error of law or an abuse of discretion. *Adoption of S.P.*, 47 A.3d at 826-827. Accordingly, it was proper for the trial court to conclude that no bond exists such that Child would suffer harm if Father's parental rights were terminated. This Court finds no abuse of discretion in the trial court's termination of Father's parental rights to Child pursuant to section 2511(b). Because the trial court's factual findings are supported by the record, and its

- 12 -

legal conclusions are not the result of an error of law or an abuse of discretion, we affirm the trial court's order involuntarily terminating Father's parental rights under section 23 Pa.C.S. § 2511(a)(2) and (b) and changing the goal to adoption.

     Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/21/2016